## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
|
QVC, INC.                          :      CIVIL ACTION
                                   :
          Plaintiff,               :
                                   :
    v.                             :      NO. 06-cv-4231(TON)
                                   :
STACEY SCHIEFFELIN,                :
DAVID SCHIEFFELIN,                 :
and MODELS PREFER, LTD.,           :
                                   :
          Defendants.              :
_____:

## MEMORANDUM OF LAW PLAINTIFF QVC, INC. IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND TO STRIKE PARAGRAPHS OF THE AMENDED COMPLAINT AND IN SUPPORT OF MOTION FOR <u>LEAVE TO FILE SECOND AMENDED COMPLAINT</u>

Plaintiff, QVC, Inc. ("Plaintiff"), by and through its undersigned counsel, respectfully submits this memorandum of law (a) in opposition to the **Motion to Dismiss Amended Complaint and to Strike Paragraphs of the Amended Complaint for Violation Of FRE 408** (the "Motion to Dismiss"), as filed by defendants, Stacey Schieffelin, David Schieffelin and Models Prefer, Ltd. (collectively, "Defendants," unless stated otherwise); and (b) in support of Plaintiff's **Motion for Leave to File Second Amended Complaint**.  For the reasons set forth below, Plaintiff submits that Defendants' Motion to Dismiss should be denied in its entirety and Plaintiff should be granted leave to file its Second Amended Complaint.

Defendants' Motion to Dismiss is based upon a flawed premise and a disingenuous position.  In violation of clear contractual preconditions to termination of the underlying license and exclusive marketing agreement with Plaintiff, Defendants advised Plaintiff that such contract is "terminated" and that they intend to act in violation of Plaintiff's rights, but, at the same time,

Defendants seek to shield their notice and actions by then proffering an "offer to compromise" the dispute arising from their very conduct at issue. No "offer to compromise" can disguise the fact that Defendants unequivocally "terminated" the subject contract and are acting in contravention of Plaintiff's rights and license. Most significantly, nowhere in the Motion to Dismiss do Defendants maintain that they have not terminated the subject agreement or are not proceeding in contravention of Plaintiff's exclusive license and marketing rights.

Defendants contend that Plaintiff's Complaint fails to meet the "case or controversy" requirement because, according to Defendants, it is "contingent" upon acts which have yet to occur. To the contrary, Plaintiff's Complaint is based upon Defendants' wrongful termination of the subject contract and the resulting deprivation and violation Plaintiff's exclusive license and marketing rights. Such actions deprive Plaintiff of its exclusive worldwide license for which it contracted. The exclusive license and marketing rights are of significant value to Plaintiff and, thus, Plaintiff's cause of action is not contingent upon any future acts by Defendants, but has already accrued.

The Complaint sets forth a claim upon which relief can be granted. Defendants' entire Motion to Dismiss, in essence, is an attempt to hide behind a smokescreen created by a misuse of Federal Rule of Evidence 408. Plaintiff is not seeking to use any portion of the termination notice other than that by which Defendants made their invalid "termination" and stated their intentions to violate Plaintiff's rights. No portion of Plaintiff's Complaint relies upon any communication directed to efforts to compromise the dispute arising from Defendants' improper conduct. As such, Defendants' argument, as a matter of law, cannot provide a basis for granting a motion to dismiss. The Complaint sets forth a claim upon which relief can be granted – that the contract at issue was improperly terminated and Defendants are depriving Plaintiff of a

valuable exclusive worldwide license to market Defendants' products.

Plaintiff also seeks leave to file a Second Amended Complaint[1], a copy of which is attached hereto as Exhibit A and made a part hereof. The principal purpose of the proposed Second Amended Complaint clarifies the relationship between Defendants and the interests of defendant Models Prefer, Ltd. in the trade name and trademark to "Models Prefer" and, hence, Plaintiff's exclusive license. The proposed Second Amended Complaint also clarifies why defendant Models Prefer, Ltd is a proper party to this action seeking a declaration and injunctive relief enforcing Plaintiff's exclusive license and marketing rights.

### FACTS

Plaintiff is a general merchandise electronic retailer. (Amended Complaint ["Complaint or "Cmplt"] at ¶8.) Plaintiff markets and distributes a wide variety of products directly to consumers through various means and media, including its merchandise-focused, direct-response television programming. (*Id.*). Defendants are in the business of selling health and beauty products including those under the trademark and trade name of "MODELS PREFER" (collectively, the "Products"). (Cmplt at ¶9.)

On April 1, 1998, QVC and Defendants Stacey Schieffelin and David Schieffelin, jointly and severally, on the one hand, and Plaintiff, on the other hand, entered into a certain exclusive license and marketing agreement (the "Agreement"). (Cmplt at ¶10). The Agreement grants Plaintiff the "exclusive worldwide right" to promote, advertise, market and sell and distribute the Products through all means and media. (*Id.*). These exclusive worldwide license and marketing rights are of great worth to Plaintiff and, as alleged in the Complaint, have a value in excess of $150,000.00 for each one (1) year Term under the Agreement. (*Id.* at ¶33). In addition, the

---

[1] Plaintiff amended the original complaint when the minimum sales numbers were met under the Agreement so as to aver that the Agreement renewed for additional term.

Agreement requires Defendant, Stacey Schieffelin, to appear on Plaintiff's direct response television programming during the Term of the Agreement in order to assist Plaintiff in the promotion, marketing and sale of the Products.  (Cmplt at ¶16).

Defendant Models Prefer Ltd. was incorporated on or about September 17, 2002 and, commencing on a date thereafter, Defendants' business transactions with Plaintiff were conducted, in whole or in part, by and through the corporate defendant Models Prefer Ltd. (Cmplt at ¶11). The Agreement provides that Plaintiff, from time to time, may issue to Defendants consignment orders for Products.  From a date commencing on or after September 17, 2002, such consignment orders were issued to Defendants by and through "Models Prefer, Ltd." (Cmplt at ¶12).

The duration of the Agreement, and, importantly, the conditions upon which it may be terminated, are expressly set forth in the Agreement:

> [T]his Agreement (the 'Initial Term') shall commence on the date hereof and shall expire two (2) years after the date of this Agreement.   Upon the expiration of the Initial Term, this Agreement shall automatically and continually renew for successive additional one (1) year terms (each a "Renewal Term" and the Initial Term and each Renewal Term each being referred to herein as a "Term"), ***unless (i) Vendor notifies QVC in writing, at least thirty (30) days prior to the end of a Term, of its intent to terminate the Agreement, and (ii) during such Term, Net Retail Sales of Products are in the aggregate less than the Minimum Amount***.   For purposes of this Agreement, "Minimum Amount" shall mean (i) $[confidential amount] in the Initial Term, (ii) $[confidential amount] in the first Renewal Term and (iii) for each succeeding Renewal Term, one hundred and five percent (105%) of the Minimum Amount applicable to the preceding Renewal Term."[2]

(Cmplt  at ¶13 [emphasis added]).  Thus, the Agreement can be terminated only upon satisfaction

---

[2]  The parties, by stipulation, have requested that the terms of the Agreement, especially with respect to price, remain confidential and subject to a **Stipulation to File Documents Under Seal**.  The Court has yet to rule upon the parties' stipulation.

of two conditions.  First, Plaintiff must fail to meet a minimum level of sales in the then current Renewal Term or "Term" ***and***, second, notice of termination is give at least thirty days prior to the end of such Term.  As long as Plaintiff satisfies its obligation to meet the minimum level of sales for a given Term, the Agreement will renew for an additional Term notwithstanding any purported notice of termination. (*Id*.)  During any Term of the Agreement and for a period of one (1) year following the expiration or valid termination thereof, Stacey Schieffelin and David Schieffelin are precluded from selling ***any*** consumer goods, including, but not limited to the Products, through means of the Electronic Media (defined by the Agreement to be "all electronic transmissions . . . through which a consumer is requested to purchase any product by mail, telephone or other electronic means, including without limitation, . . . computerized shopping services, whether on-line services or otherwise." (Cmplt at ¶¶10 & 18).

The fifth Renewal Term or "Term" under the Agreement commenced on April 1, 2006. (Cmplt at ¶21).  As stated above, such Term of the Agreement, and Plaintiff's exclusive license and marketing rights, renew for an additional one year period on April 1, 2007 unless Plaintiff is notified, in writing, at least thirty (30) days prior to April 1, 2007 of the intent to terminate the agreement; ***and***, by March 31, 2007, Plaintiff fails to meet the minimum sales requirement for the then current term, *i.e.* the Net Retail Sales of Product for the Term beginning April 1, 2006 and ending on March 31, 2007 is less than 105% of the Minimum Amount applicable to the previous Term that expired on March 31, 2006.  (Cmplt at ¶22).  Plaintiff met the Minimum Amount for the Renewal Term beginning April 1, 2006.  (*Id*.).  Thus, the Agreement was automatically extended for another Renewal Term or "Term"  beginning April 1, 2007 and expiring on April 1, 2008.  (*Id*.).  Therefore, the earliest that the Agreement can be terminated is as of April 1, 2008 and, then, only if the applicable Minimum Amount for that Term ending on

April 1, 2008 is not met. (*Id.*).

On September 12, 2006, Defendants sent a purported notice of termination of the Agreement to Plaintiff. Defendants have taken the position that the Agreement is terminated as of September 12, 2006 and have refused to further perform under the Agreement. (Cmplt at ¶23). Defendants also stated their intention to promote and endorse the Products by means of Electronic Media in violation of the non-competition provisions of the Agreement. (*Id.*). By such actions, Defendants deprive Plaintiff of its exclusive license and marketing rights under the Agreement.

Defendants' termination, however, is invalid on its face because the Agreement may only be terminated under certain conditions, which have not been met here. Specifically, Defendants have no right to terminate the Agreement in the current Renewal Term (which does not expire until April 1, 2007) because Plaintiff has already sold more than the applicable Minimum Amount and, therefore, the Agreement automatically renews for an additional one-year term that does not expire until April 1, 2008. (Cmplt at ¶22). Thus, Plaintiff remains the exclusive worldwide licensee of the Products for an additional one year term beginning April 1, 2007. Despite these automatic renewal provisions, Defendants have unequivocally expressed their termination of the Agreement and have otherwise refused to perform under the Agreement. (Cmplt at ¶23).

Notably, Defendants, even in their motion to dismiss, have never withdrawn or renounced their termination of the Agreement. Thus, Defendants, to this day, continue to deprive QVC of the exclusive license provided for in the Agreement. Instead of acknowledging this fact, Defendants try to hide their termination under the guise of FRE 408.

**ARGUMENT**

**I.    The Complaint Presents An Actual Case Or Controversy
       For Which Declaratory Relief Is Appropriate.**

Defendants contend that the this Court lacks subject matter jurisdiction because Plaintiff's Complaint purportedly alleges only contingent actions on the part of Defendants. (*See* Motion to Dismiss at p. 6) and that, therefore, declaratory relief is inappropriate to address Defendants' conduct. Defendants' arguments are a mischaracterization, at best, of the events at hand. Contrary to their protestations that they have caused no harm, Defendants, by their actions, breached and repudiated an existing agreement and, thereby, have denied to Plaintiff its exclusive rights for which it bargained and provided consideration, resulting, in turn, in continuing and serious harm to Plaintiff. Defendants' position that they rightfully terminated Plaintiff's exclusive license and marketing rights, and Plaintiff's contrary position that such purported termination is invalid, give rise to an actual case or controversy in which the respective parties' interests are directly adverse.

Plaintiff's Complaint sets forth, among other things, the following facts and conclusions which must be accepted as true for purposes of the Court's consideration of Defendants' argument:

- There existence of a valid contract granting Plaintiff an exclusive worldwide license and marketing rights to promote, advertise, market, sell and distribute Defendants' products through all means and media. (Cmplt at ¶10).

- The license agreement has a value to Plaintiff of no less than $150,000.00 for each one (1) year term under such agreement and the minimum amount in controversy exists. (Cmplt at ¶¶6, 32).

- Defendants cannot terminate the contract, and thereby end Plaintiff's exclusive rights, unless Plaintiff fails to meet certain requisite sales amounts of Defendants' products in a then current one (1) year term under the license agreement. (Cmplt at ¶¶13-15, 20-22, 28).

- Plaintiff met the minimum sales requirement for the current term under the license agreement ending on April 1, 2007 and, therefore, the agreement and Plaintiff's exclusive rights remain in full and effect through at least April 1, 2008. (Cmplt at ¶¶20-22, 28).

- Plaintiff otherwise satisfied all of its obligations under the license agreement (Cmplt at ¶28).

- Contrary to the terms of the license agreement, Defendants terminated and repudiated the license agreement on September 12, 2006 and stated that they are proceeding in violation of Plaintiff's exclusive license and marketing rights. (Cmplt at ¶¶20-22, 28).

- Defendants refuse to perform under the license agreement. (Cmplt at ¶¶23-24).

- Defendants' termination of the license agreement is invalid and ineffective to terminate such agreement. (Cmplt at ¶¶25-26).

- Defendants' conduct violates Plaintiff's exclusive license and marketing rights, as well as the non-competition provisions, of the license agreement.  (Cmplt at ¶¶17, 26-27).

- Defendants' improper termination of the license agreement, which termination is rejected by Plaintiff, gives rise to an actual, existing and continuing controversy between the parties within the scope and meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* (Cmplt at ¶¶30-31).

- Plaintiff is entitled to a declaratory judgment that its exclusive license and marketing rights are intact and not terminated by Defendants' wrongful conduct. (Cmplt at ¶¶34-35).

In repudiating and terminating the Agreement, Defendants improperly deprived Plaintiff of valuable property rights -- an exclusive worldwide license to promote, advertise, market, sell and distribute the Products through all means and media -- in violation of the terms of the Agreement and notwithstanding the consideration given by Plaintiff for such rights.  At no time do Defendants deny that they have terminated the Agreement or that they are proceeding in contravention of Plaintiff's rights.  No "contingency" exists here.  Having wrongfully deprived Plaintiff of its property rights, Defendants now seek to deprive Plaintiff of a forum to address Defendants' conduct and to redress the harm done to Plaintiff by such contract.  Plaintiff submits that Defendants' position is anathema to our judicial system and that Plaintiff should not be deprived of the ability to have this Court protect Plaintiff's rights and interests.  A dispute seeking enforcement of a contract is perhaps the most basic and fundamental "case or controversy" that can exist.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), states that:

> [i]n a cause of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Plaintiff, here, seeks no more that the declaration of its rights and the legal relations with Defendants.  As the Supreme Court explained in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941):

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if not impossible, to fashion a precise test for determining in every case whether there is such a controversy.   Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Plaintiff's Complaint presents a real and immediate controversy and not a hypothetical, abstract or contingent situation.  Defendants are wrongfully depriving Plaintiff of a valuable license and marketing rights.   Defendants' actions have caused, and are causing, continuing harm to Plaintiff.  The parties' respective legal interests could not be more adverse or the controversy more in need of judicial review and intervention.

The Third Circuit has developed a "method of analysis that focuses upon three factors to aid in determining if and when a declaratory judgment action is ripe."   *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).  A court is required to "examine the 'adversity of the interest' between the parties to the action, the 'conclusiveness' of the declaratory judgment and 'the practical help, or utility' of the declaratory judgment . . . .  If [the court is] satisfied that all three elements are present, the declaratory judgment action is ripe."   *Id.* [citation omitted]. Plaintiff submits that, as shown below, its Complaint satisfies the "adversity of interest,"

"conclusiveness" and "utility" prongs of the "actual case or controversy" and "ripeness"
requirements.

A.     The Parties' Interests Are Adverse.

The definition of "adverse interests" is well settled.  In the Third Circuit, "[p]arties'
interests are adverse where harm will result if the declaratory judgment is not entered."
*Travelers Ins. Co. v. Obusek, supra* at 1154.  Furthermore, a party is not required to wait until its
injuries can be conclusively quantified, or even until actual injuries are sustained, before seeking
declaratory relief:

> [A] party need not decide between attempting to meet the nearly
> insurmountable burden of establishing that the relevant injury is a
> mathematical certainty to occur, nor must a party await actual
> injury before filing suit.  Erecting such barriers would eviscerate
> the Declaratory Judgment Act and render the relief it was intended
> to provide illusory.

*Id.* at 1154.

As discussed above, the parties' interests here could not be more adverse.  Defendants
terminated and repudiated the Agreement and have otherwise refused to perform under the
Agreement.  Defendants are depriving Plaintiff of exclusive rights and causing Plaintiff
substantial harm.  Plaintiff, on the other hand, maintains that termination of the Agreement is
improper and contrary to its terms.  Plaintiff maintains that it stills owns the exclusive worldwide
license and marketing rights to sell the Products through all means and media.  Defendants'
position is directly opposite to that of Plaintiff.  Defendants' Motion to Dismiss attempts to
obfuscate the relatively straightforward facts of the present case by mischaracterizing Plaintiff's
action and claims as "contingent upon the occurrences of certain events" and goes so far as to
represent that "if the contingencies ever are fulfilled, then there will be no need for this lawsuit
because the issues will have been resolved amicably to both [Plaintiff's] and the Defendants'

satisfactions." (Defendants' Motion To Dismiss at p. 6). Defendants' argument ignores their conduct, the actual, and not contingent, deprivation of Plaintiff's rights and the continuing harm inflicted upon Plaintiff by Defendant. No contingencies exist that should preclude Plaintiff from seeking judicial redress for Defendants' action or to preclude Plaintiff from the opportunity to protect its property rights before further harm is inflicted upon it by Plaintiff. Defendants' very real ability to inflict additional and continuing harm upon Plaintiff does not mean that Defendants' conduct already is not actionable.

Defendants' argument that the Court should dismiss the existing civil action and require Plaintiff to wait until the end of the current Renewal Term under the Agreement before commencing a new action is fatuous. Once Defendants repudiated the Agreement and refused to perform thereunder, as alleged by Plaintiff's Complaint, an immediate cause of action arose for breach of contract under controlling Pennsylvania law:

> Under Pennsylvania law, in order for the renunciation of a contract to rise to the level of an anticipatory breach, 'there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so.'

*In re Silberman*, 30 B.R. 219, 226-27 (Bankr. E.D. Pa.1983) (quoting *McCloskey & Co. v. Minweld Steel Co.*, 220 F.2d 101, 104 (3d Cir.1955). *See also 2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies*, 507 Pa. 166, 489 A.2d 733, 736 (1985); *William B. Tanner Co., Inc. v. WIOO, INC.*, 528 F.2d at 268-69 (3d Cir.1975); *Jonnet Development Corp. v. Dietrich Industries, Inc.*, 316 Pa. Super. 533, 463 A.2d 1026, 1031 (1983); *Oak Ridge Construction Co. v. Tolley*, 351 Pa. Super. 32, 504 A.2d 1343, 1346 (1985). *Accord*, Restatement (Second) of Contracts § 250 (1979). Moreover, "[l]anguage that under a fair reading amounts to a statement of intent not to perform except on conditions which go beyond the contract constitutes a repudiation." *General Diversified, Inc. v. Poole Truck Line, Inc.*, No. 88-5484, 1991 WL 53673,

*6 (E.D. Pa., April 4,1991) (citing *Oak Ridge Construction Co. v. Trolley,* 351 Pa. Super. 32, 504 A.2d at 1347 (1985)). *See also* Restatement (Second) of Contracts § 250 comment b (1981)).

Thus, Defendants' termination and repudiation of the Agreement is unquestionable and, furthermore, not denied.  Defendants' improper termination of the Agreement and of Plaintiff's exclusive rights gave to Plaintiff the right to immediately treat the Agreement as breached.  Pennsylvania law is well-established that "[t]he renunciation of a contractual duty before the time fixed in the contract for performance is an anticipatory repudiation which ripens into a breach prior to the time for performance only if the injured party elects to treat it as such." *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 634-35 (E.D. Pa. 2004) (citing *Franconia Assoc. v. United States*, 536 U.S. 129, 143, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (citing Restatement (Second) of Contracts (1979)).  In the event of an anticipatory breach, an injured party, such a Plaintiff, may sue at once to protect its contract rights.  *McCormick, v. Fidelity & Cas. Co. of New York*, 307 Pa. 434, 438-39, 161 A. 532 (Pa. 1932).

Defendants' conduct gave rise to a breach of the Agreement and a violation of Plaintiff's rights.  As such, the adverse interests of the parties are manifest and Plaintiff submits that declaratory relief is appropriate to determine the parties' respective rights.

B.    The Amended Complaint Does Not Seek An Advisory Opinion
      And A Declaratory Judgment Would Be Conclusive.

Defendants contend that the Court "does not yet have a concrete set of facts upon which a judgment may be lawfully based[,]" and, accordingly, "any judgment would not be conclusive." (Defendants' Motion To Dismiss at p. 6).  Defendants' position is specious.

A declaratory judgment admittedly must be "conclusive"; "[t]hat is, the legal status of the parties must be changed or clarified by the declaration."  *Travelers Ins. Co. v. Obusek*, 72 F.3d at 1154.  Thus, the Third Circuit opined in the *Travelers* case:

> This portion of the analysis is part and parcel of the constitutionally mandated inquiry into the existence of a case or controversy. The "contest must be based on a 'real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " [citations omitted].

*Id.* at 1155. As set forth above, there are more than sufficient facts alleged in Plaintiffs' Complaint to establish an existing case or controversy. No mere adversary opinion is sought by the Complaint, but rather the restoration of Plaintiff's exclusive license and marketing rights. Thus, Plaintiff seeks declaratory relief from this Court determining and declaring that Defendants' purported notice of termination, in fact, did not terminate the Agreement and that Plaintiffs' rights and the Agreement (including the non-competition obligations owing to Plaintiff) are in full force and effect. A judgment determining and declaring the continued existence of the Agreement and Plaintiff's rights thereunder will conclusive resolve the matters before the Court with respect to Defendants' conduct and the invalid termination of the Agreement in particular. Plaintiff's injuries are extant and result from Defendants' actual termination and repudiation of the Agreement, not from any "hypothetical state of facts." Absent such a judgment, Plaintiff, which already has sustained harm, will continue to suffer serious and substantial prejudice and injury.

Defendants also complain that Plaintiff additionally seeks a declaration that, due to Defendants' efforts to thwart and prevent Plaintiff's performance under the Agreement, the Agreement should be deemed renewed until April 1, 2009 (as opposed to April 1, 2008) if the civil action is not resolved prior to April 1, 2008. In order to narrow the issues now before the Court, but subject to its rights to seek further relief in the future, Plaintiff has withdrawn this particular request for relief in its proposed Second Amended Complaint for which Plaintiff is

requesting leave to file with the Court..

C.    A Declaratory Judgment Would Be
      Of Practical Help To The Parties.

Defendants again mischaracterize Plaintiff's claims and requests for relief and assert that Plaintiff is not requesting this Court to interpret contractual terms or determine whether Defendants' conduct is in breach of the Agreement. Even a cursory reading of the Complaint belies Defendants' assertions since the Complaint certainly requests that this Court construe the Agreement, determine the parties' respective rights under the Agreement and rectify Defendants' breach of the Agreement by restoring Plaintiffs' exclusive license and rights. Plaintiff submits that, by doing so, the requirement that a declaratory judgment must have utility and practical help to the parties is satisfied. *See Travelers*, 72 F.3d at 115.

Contrary to Defendants' contention, the present case is not a situation where "the parties are embroiled in business negotiations." (Defendants' Motion To Dismiss at p. 9). To the contrary, Defendants, by their conduct, have breached an existing contract and taken away Plaintiff's rights. No "business negotiations" are at issue here.

Defendants may contend that their actions are proper, but Plaintiff's Complaint alleges otherwise. Plaintiff's Complaint alleges a breach and repudiation of the Agreement and injury as a result thereof. The Complaint further alleges continuing harm as a result of Defendants' wrongful conduct. Defendants' actions are neither "business negotiations" nor matters outside the scope of the judicial system, but rather violations of law and injuries to Plaintiff for which it is entitled to seek judicial relief. In short, Defendants seek to violate Plaintiff's rights and trample upon an existing contract with impunity for their actions. If Plaintiff is deprived of a forum to present its claims and seek protection of the law, Plaintiff's loss of its rights will go unaddressed and the injury to Plaintiff will continue and exacerbate. Under such circumstances,

Plaintiff submits that there can be no doubt that a declaratory judgment here would be of "practical help."

## II.    Plaintiff's Complaint Sets Forth A Claim
## Upon Which Relief May Be Granted

Defendants seek to distract the Court's focus from the allegations of Plaintiff's Complaint by injecting extraneous issues regarding a September 12, 2006 letter sent by Defendants in which, after improperly terminating the Agreement and stating the intention to proceed in contravention of Plaintiff's rights, Defendants purport to make an offer to compromise the dispute arising from their improper conduct. Defendants' subsequent offer to resolve their breach of the Agreement does not constitute either a withdrawal of the improper termination of the Agreement and should not prevent Plaintiff from seeking judicial redress for the wrongs committed against it by Defendants. Defendants' conduct in improperly terminating and repudiating the Agreement cannot be insulated simply by including a subsequent offer to compromise in the notice of improper termination of the Agreement. The issues are separate and distinct. In addition, Plaintiff, at no point, relies upon any portion of the subject letter that pertains to an offer to compromise or, indeed, at all refers to the letter directly in the Complaint. In any event, Defendants' argument not only is a perversion of Fed.R.Evid. 408, but, at most, should be the basis for a motion *in limine* regarding the admissibility of those portions of the subject correspondence pertaining to its purported offer to compromise, and not a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Fed.R.Evid. 408 was not intended to shield otherwise wrongful conduct or to allow for surreptitious transgression of the rights of others. Otherwise, all wrongful conduct could be removed from the protection of the law by simple manipulation of Fed.R.Evid. 408. Defendants cannot meet their burden under Fed.R.Civ.P. 12(b)(6) and Plaintiff submits that their request to dismiss Plaintiff's Complaint should be denied.

-15-

Dismissal under Rule 12(b)(6) is generally disfavored and is proper only in extraordinary cases. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462 (4th Cir. 1981); *United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1991). An action should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistent with the plaintiffs' allegations. *Conley v.. Gibson*, 355 U.S. 41, 45-46 (1957); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3rd Cir. 1994). Thus, a plaintiff's complaint may be dismissed only if, "after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (emphasis added). It is well established that a defendant challenging the plaintiff's complaint has the burden of demonstrating that no claim has been stated. *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406 (3rd Cir. 1991), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839 (1991) (citing *Johnsrud v. Carter*, 620 F.2d 29 (3rd Cir. 1980).

As set forth above, Plaintiff' Complaint alleges that Defendants improperly terminated an existing Agreement and are depriving Plaintiff of its exclusive license and marketing rights. Defendants' response to these allegations is not to deny the wrongful termination of the Agreement or that they are proceeding in contravention of Plaintiff's rights, but rather to argue the admissibility into evidence of certain portions of a letter not even referenced or quoted, much less relied upon, by Plaintiff in the Complaint. Defendants' argument cannot form the basis of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). That portion of the subject letter terminating and repudiating the Agreement is not, and was not intended to be, an offer to compromise a dispute. Indeed, such termination gave rise to the current dispute between the parties and has never been

withdrawn.  A reading of the subject letter, as appended to the Motion to Dismiss, not Plaintiff's

Complaint, demonstrates that the correspondence has two completely different purposes: First, to

terminate the Agreement and to announce that Defendants are proceeding in contravention of

Plaintiff's exclusive license and marketing rights.  Second, and only secondly, to propose a

resolution of the dispute arising from Defendants' actions.  Even if that portion of the subject

letter where Defendants improperly terminate the Agreement and state their intention to violate

Plaintiff's rights was within the purview of Fed.R.Evid. 408, which it is not, Defendants'

argument would not succeed::

> The fact that a pleading contains references to documents that may
> eventually be ruled inadmissible in evidence is not a proper basis
> for dismissal pursuant to Rule 12(b)(6). . . . Thus, though
> admissibility of a document would properly be considered in the
> context of a motion for summary judgment in opposition to which
> the plaintiff has purported to adduce the proof on which he would
> rely at trial, evidentiary flaws in documents described in a pleading
> are not a basis for dismissal for failure to state a claim.

*Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123-24 (2d Cir. 1991).  Accepting all facts as

alleged in the Complaint as true, *i.e.*, that Defendants' improperly terminated the Agreement and,

by depriving Plaintiff of its exclusive license and marketing rights are causing substantial harm

to Plaintiff, the Complaint sets forth a claim upon which relief can be granted.

Furthermore, Fed.R.Evid. 408, by its very language, "does not require the exclusion of

any evidence otherwise discoverable merely because it is presented in the course of compromise

negotiations."  None of the cases relied upon by Defendants support the argument that the

Complaint should be dismissed.  None of the cases relied upon by Defendants dismissed a

Complaint because an express statement terminating a contract also included an "offer to

compromise."  In fact, the Rule 408 analysis in virtually all of the cases relied upon by

Defendants is cursory at best.  *See* Defendants' Motion To Dismiss at 13-14 (citing *Torvec, Inc.*

*v. John Doe*, No. 00-CV-6856 CJS(F), 2001 WL 1822361 at * 2 (W.D.N.Y. Sept. 10, 2001)
(granting motion to dismiss due to lack of diversity without discussion of substance of "offer to
compromise"); *Paley v. U.S.*, No. 95 Civ. 5180 (JFK), 1998 WL 470512 at * 1 n.1 (S.D.N.Y.
Aug. 11, 1998) (containing two-sentence footnote related to offers to compromise which does
not describe the substance of the offer to compromise at issue); *Sanger v. Reno*, 966 F. Supp. 151
(S.D.N.Y. 1997); *Burdick v. Koerner*, 988 F. Supp. 1206, 1215 (E.D. Wis. 1998) (containing one
footnote of a 17-page opinion which cursorily notes that the plaintiffs should not have submitted
certain exhibits which contained offers to compromise.); *Tiscornia v. Travelers Corp.*, No. 1:95
CV 862, 1996 WL 33170228 at *10 (W.D. Mich. Oct. 23, 1996) (deciding motion to strike based
on FRE 408 was "moot" after court had ruled on motion for summary judgment).  None of these
cases, most of which are unreported and, therefore, of questionable value as precedent in any
event, support Defendants' position.

The remaining case relied upon by Defendants, *Philadelphia's Church of Our Savior v.
Concord Twp.*, No. Civ. A. 03-1766, 2004 WL 1824356 (E.D. Pa. July 27, 2004), actually
illustrates the reasons why dismissal is not appropriate.  In *Philadelphia's Church,* the plaintiff
filed a complaint which alleged that the defendants had "wrongfully rejected the Church's
request for a building permit after promising to issue one."  *Id.* at *1.  Thereafter, the parties
"met with the Court" and "entered into settlement negotiations."  *Id*.  Ultimately, "the parties
agreed that plaintiff would complete an application for a building permit" and the defendant
"issued a Building Permit authorizing plaintiff to erect the proposed sanctuary."  *Id*.  Then,
unlike the situation here where Plaintiff is not referencing or relying upon any settlement
proposals, the plaintiff in *Philadelphia Church* filed a motion for leave to supplement its first
amended complaint to "include paragraphs referring to the settlement conference and how the

concessions made by the Township establish that defendants had the authority to waive its application requirements." *Id.* The defendants opposed the motion on the grounds that "the motion to supplement would only proffer inadmissible evidence [pursuant to Fed.R.Evid 408] making the supplement futile" and on the grounds that it was brought in bad faith. *Id.* at *2.

While, ultimately, the *Philadelphia Church* court denied the plaintiff's motion for leave to amend the pleading, the court's analysis shows precisely why Defendants' argument is erroneous. Significantly, the *Philadelphia Church* court held that "admissions of fact made by defendants during settlement negotiations [] fall outside the scope of Rule 408." The court concluded that the subject supplemental allegations proposed by the plaintiff did not "constitute such an admission." *Id.* Unlike the plaintiff in *Philadelphia's Church*, however, Plaintiff referenced only the factual admissions of Defendants pertaining to their termination of the Agreement and violations of Plaintiff's license and rights, and not any terms of a purported and subsequent offer to resolve their breach of the Agreement.

Second, the *Philadelphia Church* court held that "it appears that discovery would not yield any information that could lead to admissible evidence" with respect to the allegations plaintiff sought to add. *Id.* Here, evidence related to Defendants' termination of the Agreement and subsequent conduct will be admissible. Defendants' termination of the Agreement was terminated by Defendants is not a fact protected by Fed.R.Evid. 408 and, thus, dismissal is not appropriate.

By terminating the Agreement, Defendants are depriving Plaintiff of a valuable exclusive worldwide license to market and sell the Products. Defendants cannot be permitted to wrongfully terminate the Agreement and then hide that termination from judicial review simply by including offers of compromise in the termination notice. Otherwise, contracting parties

would have the ability to breach any contract without any potential liability.  Under Defendants'
reasoning, any contracting party could unequivocally terminate any agreement at any time
(regardless of its contractual ability to do so), and avoid a breach of contract claim by proposing
an entirely new contract and attaching a "settlement offer – confidential" header to its
correspondence.  Such is not the purpose of Fed.R.Evid 408 and Defendants' request for
dismissal under Fed.R.Civ.P. 12(b)(6) on this basis should be denied.

### III.    Models Prefer Is A Proper Defendant.

Defendants argue that the Complaint should be dismissed because defendant Models
Prefer is not a party to any contract with Plaintiff and, therefore, Plaintiff cannot maintain a
breach of contract claim against Models Prefer.  Defendants' argument ignores that the
Complaint asserts other causes of action and claims against defendant Models Prefer, Ltd. in
addition to breach of contract.  Plaintiffs' claims are not contingent upon defendant Models
Prefer, Ltd. being a named party to the Agreement.  The Complaint seeks a determination and
declaration that Plaintiff maintains its exclusive license and rights to sell and market the Products
and that defendant, Models Prefer, Ltd., should be bound by such a determination.

In any event, Plaintiff is requesting leave to file a Second Amended Complaint clarifying
the relationship between defendant Models Prefer, Ltd. and the Agreement and, most
importantly, why such defendant is bound by the terms of the Agreement and is subject to
Plaintiff's exclusive license and rights.  Moreover, the proposed Second Amended Complaint
sets for a claim for tortious inference with the Agreement by defendant Models Prefer, Ltd.
rather than a claim for breach of contract against defendant Models Prefer, Ltd.  Plaintiff submits
that proposed Second Amended Complaint renders Defendants' argument as moot.

The proposed Second Amended Complaint asserts a claim against defendant Models

Prefer, Ltd. for intentional interference with contractual relations arising from its conduct regarding the Agreement.  (*See* Second Amended Complaint at ¶¶ 51-56).  Under Pennsylvania law, a claim for intentional interference with existing contractual relations will exist where a plaintiff shows:

> (1) the existence of a contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant intended to harm the existing relation; (3) no justification or privilege on the part of the defendant; and (4) actual damages as a result of the defendant's conduct.

*ATE Kays Company v. Pennsylvania Convention Ctr. Auth.*, 2000 WL 1763669 at *3, No. CIV.A. 00-CV-3693. (E.D. Pa. Nov 21, 2000) (citing *Pawlowski v. Smorto*, 403 Pa. Super. 71, 588 A.2d 26, 29-40 (1991))  As alleged in the proposed Second Amended Complaint, defendant, Models Prefer, Ltd., is a corporation wholly owned by defendants Stacey Schieffelin and David Schieffelin, and through which the Schieffelins transacted all business with Plaintiff since 2002. Defendant Models Prefer, Ltd., as alleged in the proposed Second Amended Complaint, is the representative and agent of the Schieffelins and, as such, is bound by the Agreement in accordance with its terms.  As the representative of the Schieffelins and the entity through which the Schieffelins performed under the Agreement, defendant Models Prefer, Ltd. has knowledge of the Agreement and the exclusive license granted to Plaintiff thereunder.  The conduct of defendant Models Prefer, Ltd., as alleged in the proposed Second Amended Complaint, constitutes purposeful acts intended to harm the contractual relationship between Plaintiff and the Schieffelins.  (*See* Second Amended Complaint at ¶ 40).  In turn, the proposed Second Amended Complaint makes no claim against defendant Models Prefer, Ltd. for breach of the Agreement.

**IV.    Plaintiff's Motion For Leave To File A Second Amended Complaint Should Be Granted.**

Plaintiff seeks leave to file a Second Amended Complaint in order to clarify the relationship between Defendants and the interests of defendant Models Prefer, Ltd. in the trade name and trademark to "Models Prefer" and, hence, Plaintiff's exclusive license.  The proposed Second Amended Complaint also clarifies why defendant Models Prefer, Ltd is a proper party to this action seeking a declaratory judgment and injunctive relief enforcing Plaintiff's exclusive license and marketing rights.

The Court has broad discretion to permit amended pleadings under Rule 15 of the Federal Rules of Civil Procedure, which mandates that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  *See Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).  Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, . . . leave sought should, as the rules require, be 'freely given'." *Foman v. Davis,* 371 U.S. 178, 182 (1962). *See Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984) (holding that the district court "may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party").  Rather, in order to merit denial of leave to amend, the delay must result in prejudice to the opposing party.  *See also Freedom Int'l Trucks Inc. v. Eagle Enterprises, Inc.*, No. Civ. A 97-4237, 1998 WL 639254, at *1 (E.D. Pa. Sept. 15, 1998) (citing *Kiser v. General Elec. Corp.*, 831 F.2d 423, 427 (3d Cir. 1987)).  In the present case, granting leave to file the requested Second Amended Complaint would not prejudice Defendants as they have yet to file an answer, no discovery has been conducted and no conference under Fed.R.Civ.P. 16 has taken place.  Further, the proposed

Second Amended Complaint is based upon the same set of operative facts which governed the previous complaint. There is no undue delay as this action still is in its nascent stages.

For the foregoing reasons, in the event the Court grants Defendants' motion to dismiss Models Prefer on the grounds that it is not a party to the Agreement, QVC requests that it be granted leave to file a Second Amended Complaint against all Defendants.

## CONCLUSION

For the foregoing reasons, plaintiff, QVC, Inc., respectfully submits that the **Motion to Dismiss Amended Complaint and to Strike Paragraphs of the Amended Complaint for Violation of FRE 408**, as filed by defendants, Stacey Schieffelin, David Schieffelin and Models Prefer, Ltd., should be denied in its entirety and plaintiff's **Motion for Leave to File Second Amended Complaint** should be granted to permit plaintiff to file its proposed Second Amended Complaint

Respectfully submitted,

SAUL EWING LLP

*/s/ Nathaniel Metz*
By:_____
Nathaniel Metz, Esquire
(215) 972-8385
(215) 972-2282 (Telefacsimile)
nmetz@saul.com
John E. Bisordi, Esquire
(215) 972-7759
(215) 972-1831 (Telefacsimile)
jbisordi@saul.com
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Dated: March 15, 2007                    Attorneys for Plaintiff QVC, Inc.