IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QVC, INC. : | |
| Plaintiff, : | |
| v. : | CIVIL ACTION |
| : | NO. 06-4231 (TON) |
| STACEY SCHIEFFELIN, : | |
| DAVID SCHIEFFELIN : | |
| and MODELS PREFER, LTD. : | |
| Defendants. : | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT AND TO STRIKE PARAGRAPHS OF THE AMENDED COMPLAINT FOR VIOLATION OF FRE 408**

**There Is No Case or Controversy**

In its Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pltff's. Mem."), Plaintiff QVC, Inc. ("QVC") acknowledges, as it must, that in order for this Court to have jurisdiction over QVC's claims, a case or controversy must exist. QVC further acknowledges, as its Amended Complaint alleges, that the *sole* "factual" basis for QVC's Complaint and the declaratory relief sought therein is the September 12, 2006 letter (the "Settlement Letter"). Pltff's. Mem., p. 6. Accordingly, as QVC acknowledges, in order for this Court to conclude that it has jurisdiction over the claims alleged, the Court must find that the Settlement Letter created an actionable dispute.

Faced with the undisputable fact that the Settlement Letter plainly states that it is just that - a Settlement Letter - QVC attempts to manufacture subject matter jurisdiction by arguing that the Court should view the Settlement Letter as something completely different - a termination notice. However, the plain language of the Settlement Letter simply does not support QVC's contorted argument.

On its face, the Settlement Letter is nothing more than a letter conveying a settlement proposal. First, the top of the first page is marked "***SETTLEMENT OFFER – CONFIDENTIAL PURSUANT TO FRE 408***," clearly indicating Defendants' intent that the letter in its entirety be construed as a settlement proposal. Second, the Settlement Letter openly responds to a previous conversation with QVC's in-house lawyer during which QVC's counsel invited a settlement proposal. Indeed, QVC does not dispute that the letter responds to an invitation to submit a settlement offer. Third, the letter contains "proposed business terms governing the cessation of business between our clients" and states that the proposed terms are contingent upon "an amicable termination with QVC US." If the Settlement Letter itself constituted an unequivocal termination notice, then there would be no need to propose terms under which the business between QVC and Defendants would cease, and there would have been nothing left to amicably terminate.

QVC tries to bolster its argument that the Settlement Letter should be misconstrued as an unequivocal termination notice by declaring that Defendants "have never withdrawn or renounced their termination of the Agreement." (*See, e.g.,* Pltff's. Mem., p. 6.) The response to this is remarkably simple. Defendants have never withdrawn or renounced a termination *because there never was a termination and therefore there was nothing to withdraw or renounce.*

2

To the extent, however, that QVC sought assurances from Defendants that they were not engaging in conduct that violated QVC's contractual rights, those assurances *were readily provided.* After instituting this action, QVC demanded assurances from the Defendants that they were not engaging in conduct that violated QVC's contractual rights. *See* letter dated Sept. 25, 1006, from N. Metz to S. Blinkoff, a true and correct copy of which is attached hereto as Exhibit "A." Defendants' counsel promptly responded with assurances that they were engaging in no such activity. *See* letter dated Sept.27, 2006 from A. Stone to N. Metz, a true and correct copy of which is attached hereto as Exhibit "B." This course of events simply underscores the fact that QVC has failed to state any allegations that would rise to an actionable case or controversy over which this Court could assume jurisdiction.

In short, QVC's entire case rests upon a distorted and unreasonable interpretation of the Settlement Letter that is supported by neither the plain language of the Settlement Letter nor the parties' subsequent conduct. In other words, QVC wants the Court to find that a letter labeled "settlement offer," that makes a settlement proposal, that the Defendants have assured QVC is in fact a settlement proposal, is *not* a settlement proposal. There is no basis upon which the Court could draw this conclusion or assume jurisdiction over the claims QVC has attempted to allege.

## This Action is Subject to Dismissal Under FRCP 12(b)(6)

Even if this Court were to conclude that it could (and should) exercise its discretion to consider QVC's claims under the Declaratory Judgment Act, those claims should be dismissed as a matter of law pursuant to Rule 12(b)(6). Here, too, QVC misconstrues Defendants' arguments and distorts the law.

Defendants first ask the Court to strike those paragraphs of the Complaint that allege conduct or statements made in compromise negotiations. The precedent for striking such allegations is clear. (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss at 13-14.)

Next, Defendants ask the Court to decide, after those improper allegations have been stricken, whether the Complaint fails to state a claim for relief. If QVC has sufficiently stated a claim for relief without reference to conduct or statements made in compromise negotiations, then its claims may proceed. If, on the other hand, all of QVC's allegations are based upon conduct or statements made in compromise negotiations and those allegations have been stricken from the Complaint, then QVC has not sufficiently stated a claim for relief, and its claims must be dismissed pursuant to Rule 12(b)(6). In this respect, it is telling that even in its proposed Second Amended Complaint, QVC has not alleged *any* actual breach of the parties' Agreement. Indeed, QVC could not make any such allegations in good faith because, consistent with the assurances Defendants provided to QVC on September 27, 2006, to this very day Defendants continue to fill orders that QVC has placed for Model Prefer cosmetic products.

* * * * *

For all the foregoing reasons, as well as those set forth in their opening brief, the Defendants respectfully request that the Court grant their motion to dismiss.

                                  Respectfully submitted,

                                  BROWN STONE NIMEROFF LLC

                  By:    _____
                                  Antoinette R. Stone (Pa.Id.No. 23464)
                                  (Signature Validation No. ARS3519)
                                  1818 Market Street
                                  Suite 2300
                                  Philadelphia, PA 19103
                                  (267) 861-5330

Dated: March 22, 2007          (267) 350-9050

# EXHIBIT A

Case 2:06-cv-04231-TON Document 23 Filed 03/22/2007 Page 6 of 13



SAUL
EWING
Attorneys at Law
A Delaware LLP

Nathaniel Metz
Phone: (215) 972-8385
Fax: (215) 972-2282
nmetz@saul.com
www.saul.com

September 25, 2006

*via* ELECTRONIC TRANSMISSION
*and* OVERNIGHT DELIVERY

Sharon Blinkoff, Esquire
Buchanan Ingersoll & Rooney PC
One Chase Manhattan Plaza, 35th Floor
New York, New York 10005

        RE:    QVC, Inc. v. Models Prefer Ltd., *et al.*
                  U.S.D.C., E.D.Pa., C.A. No. 06-cv-04231(TON)

Dear Ms. Blinkoff:

       As you are aware, this law firm represents QVC, Inc. ("QVC") in regard to the above-captioned civil action and the underlying issues pertaining to an agreement, dated as of April 1, 1998 (as amended on April 29, 1999) between and among, Stacey Schieffelin and David Schieffelin, jointly and severally, on the one hand, and QVC, on the other hand (the "Agreement"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement. The Agreement grants certain exclusive rights and licenses to QVC, in addition to imposing certain non-competition obligations upon Models Prefer.

       I am in receipt of your letter, dated September 12, 2006 (the "September 12th Letter"), directed to QVC by you on behalf of Stacey Schieffelin, David Schieffelin and Models Prefer Ltd., a corporation wholly owned by them and through which they are transacting business. (Stacey Schieffelin, David Schieffelin and Models Prefer Ltd. hereinafter are referred to collectively as "Models Prefer" or "Vendor," unless stated otherwise). The Agreement, of course, grants certain exclusive rights and licenses to QVC, in addition to imposing certain non-competition obligations upon Models Prefer. The September 12th Letter purports to terminate the Agreement effective as of September 12, 2006. For the reasons set forth below, the

Centre Square West ♦ 1500 Market Street, 38th Floor ♦ Philadelphia, PA 19102-2186
Phone: (215) 972-7777 ♦ Fax: (215) 972-7725

BALTIMORE   CHESTERBROOK   HARRISBURG   NEWARK   PHILADELPHIA   PRINCETON   WASHINGTON   WILMINGTON
A DELAWARE LIMITED LIABILITY PARTNERSHIP

Sharon Blinkoff, Esquire
September 25, 2006
Page 2

September 12th Letter cannot act to so terminate the Agreement and any such asserted termination, on its face, is invalid.

The current Renewal Term under the Agreement commenced on April 1, 2006. By its express terms, the Agreement can be terminated only upon thirty days notice prior to the end of a Renewal Term and *then only where the Net Retail Sales are less than the applicable Minimum Amount for such Renewal Term*:

> Upon the expiration of the Initial Term, this Agreement shall automatically and continually renew for successive additional one (1) year terms (each a 'Renewal Term' and the Initial Term and each Renewal Term each being referred to herein as a 'Term'), unless (i) Vendor notifies QVC in writing, at least thirty (30) days prior to the end of a Term, of its intent to terminate the Agreement, and (ii) during such Term, Net Retail Sales of Products are in the aggregate less than the Minimum Amount.

Agreement, § 2(a). At this juncture, there are almost six and one half months remaining in the current Renewal Term. Unless QVC fails to meet the requisite amount of the Net Retail Sales for this Renewal Term, the Agreement will renew for an additional Renewal Term to expire on April 1, 2008. While the conduct of Models Prefer in this matter has prejudiced severely QVC's efforts to meet the requisite Retail Net Sales for this Renewal Term, the Agreement nonetheless grants QVC until April 1, 2007 to do so. Your purported termination of the Agreement as of September 12, 2006, accordingly, is invalid and the Agreement remains in full force and effect.

The September 12th Letter states that "[t]he intention of [Models Prefer] is to pursue classic retail opportunities, as well as Internet sales." The September 12th Letter further states that Models Prefer "may consider infomercials[.]" Any and all such conduct involving the Products or Electronic Media is in violation of the provisions of the Agreement.

Section 1(a) of the Agreement grants the following exclusive rights and license to QVC to Promote the Products for the Term of the Agreement:

> (a) <u>Marketing Rights</u>. QVC shall have the exclusive worldwide right to Promote the Products through all means and media, including, without limitation, Electronic Media (which, for purposes of this Agreement, shall mean all electronic transmissions, whether now in existence or developed hereafter, through which a consumer is requested to purchase any product by mail, telephone or other electronic means, including, without limitation, televised electronic retailing programs, infomercials, direct response commercial spots and computerized shopping services, whether on-line services or otherwise).

Sharon Blinkoff, Esquire
September 25, 2006
Page 3


Section 4 of the Agreement mandates that "Vendor shall not promote or endorse any consumer goods (including, without limitation, the Products) by means of Electronic Media during any Term and for one (1) year after the expiration or termination of this Agreement."

In light of the September 12th Letter, and the statements set forth therein, QVC is compelled to demand the written assurances of Models Prefer that

(1) Models Prefer is not, has not and will not Promote any Products in violation of the exclusive rights and license granted to QVC under the Agreement; and

(2) Models Prefer is not, has not and will not promote or endorse any consumer goods (including, without limitation, the Products) by means of Electronic Media in violation of the non-competition provisions set forth in Section 4 of the Agreement.

QVC also demands that Models Prefer acknowledge, in writing, the invalidity of the purported termination of the Agreement sought by the September 12th Letter and, furthermore, that Models Prefer will honor their obligations to QVC under the Agreement.

Absent receipt of the above requested written assurances and acknowledgements no later than 5:00 p.m. (EDT) on September 27, 2006, QVC will proceed to enforce its rights through such means as deemed necessary to protect its interests, including, without limitation, a request for judicial intervention and immediate injunctive relief, all without further notice to you except as required by law. In the interim, QVC reserves all of its rights and remedies.

Thank you for your prompt attention to this matter.

Very truly yours,

NATHANIEL METZ

NM/dge
cc:   Lawrence R. Hayes, Esquire, Vice President/Legal
      Michael R. Greco, Esquire

# EXHIBIT B

## Buchanan Ingersoll & Rooney PC
Attorneys & Government Relations Professionals

**Antoinette R. Stone**
215 665 3819
antoinette.stone@bipc.com

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

September 27, 2006

*via PDF and regular mail*

Nathaniel Metz, Esquire
Saul Ewing LLP
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102-2186

Re: QVC, Inc. v. Models Prefer Ltd, et al.
C.A. No. 06-cv-04321 (USDC, EDPa)

Dear Sandy :

As you know, I am representing the defendants in the above-referenced action. This letter is in response to your letter of September 25, 2006, addressed to Sharon Blinkoff.

I understand from your letter that you object to the notice of termination contained in Ms. Blinkoff's letter of September 12, 2006. Although I do not agree with your interpretation of the termination provision in the parties' contract, or your characterization of my clients' "conduct" vis-à-vis QVC, I see no need to focus on our differing interpretations at this point. You may know that Ms. Blinkoff sent her letter in response to Mr. Larry Hayes' invitation to her to submit a proposal to resolve the dispute between the parties arising out of the contract regarding the Models Prefer product line. The intent of her September 25 letter was to do just that -- propose a resolution. You and I have spoken concerning my clients' proposed resolution, and I am confident that you have conveyed the substance of our discussion to your client. I hope and expect to hear from you promptly regarding QVC's response.

September 27, 2006
Page - 2 -

      With respect to your concern that Ms. Blinkoff's letter was some kind of signal that our clients are engaging in activity that violates the parties' contract, please be assured that they are not engaging in any such activity. While my clients are puzzled by QVC's apparent lack of interest in promoting the Models Prefer product line, they are interested at this point in working with QVC, in good faith, to arrive at a sensible and fair adjustment of the parties' relationship. I see no basis for immediate judicial intervention and trust that you agree that we should devote our efforts to determining whether an amicable resolution is possible. If, after a reasonable period of time, it appears that the parties are unable to reach a resolution, we both will have an opportunity to seek relief in court.

      Like Ms. Blinkoff's letter, this letter is subject to the protections of FRE 408. I look forward to hearing from you.

Best regards,

Antoinette R. Stone

ARS/
cc: Sharon Blinkoff, Esquire

## CERTIFICATE OF SERVICE

I, Antoinette R. Stone, hereby certify that on this _22nd_ day of March, 2007, I caused a true and correct copy of the within and foregoing Defendants' Reply Memorandum in Support of Their Motion to Dismiss Amended Complaint and to Strike Paragraphs of the Amended Complaint for Violation of FRE 408 to be deposited in the United States mail, first class postage prepaid, addressed to :

>Nathaniel Metz, Esquire
>Saul Ewing LLP
>Centre Square West
>1500 Market St., 38[th] Floor
>Philadelphia, PA 19102-2186

_____
Antoinette R. Stone