# EXHIBIT "B"

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STACEY AND DAVID SCHIEFFELIN, individuals, and MODELS PREFER, LTD., a Connecticut corporation,<br><br>     Plaintiffs,<br><br>v.<br><br>QVC, INC., a Delaware corporation,<br><br>     Defendant. | CIVIL ACTION<br><br>NO. _____<br><br>**Jury Trial Demanded**<br><br>Date of Filing: March 21, 2007 |

## COMPLAINT

1. This is an action against QVC, Inc. ("QVC") for conversion and theft of intellectual property; tortious interference with prospective business relations; and unfair competition.

## JURISDICTION AND VENUE

2. QVC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at Studio Park, 1200 Wilson Drive, West Chester, Pennsylvania 19380.

3. The Schiefflins are citizens of the State of Connecticut.

4. Models Prefer, Ltd. is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located at 567 S. Leonard Street, #1, Waterbury, Connecticut 06708. The Schieffelins incorporated Models Prefer, Ltd.

5. The value of the claims asserted herein exceed $75,000, exclusive of interest and costs.

6. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. 1332(a) because there is diversity of citizenship between Plaintiffs and QVC.

7. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## GENERAL ALLEGATIONS

### I. Plaintiffs Own and Have Registered the Trademark "Models Prefer"

8. On September 25, 1995, Plaintiffs first registered the trademark "Models Prefer" with the United States Patent and Trademark Office (the "PTO").

9. Plaintiffs own the Models Prefer trademarks and the name Models Prefer.

### II. QVC Uses Unlawful Restraints on Trade to Attain and Maintain Its Super-Majority Market Share

10. QVC markets and distributes a variety of products to consumers through direct response television programming. QVC controls well over 50% of the television shopping market and has revenues of over $7 billion annually. In fact, according to QVC's website, "QVC is the leader in electronic retailing, reaching approximately 96% of all U.S. cable homes, as well as nearly 25.3 million satellite homes equating to over 160 million homes worldwide." In addition, "QVC is ranked the 2nd largest television network in the U.S. after CBS."

11. Upon information and belief, QVC has attained and maintained its controlling share of the market, in part, through procurement and enforcement of exclusive dealing agreements containing unlawful restraints on trade. Often, QVC's agreements purport to extend these unlawful restraints of trade into perpetuity. Moreover, upon information and belief, the restraints of trade typically attempt to reach beyond the direct response television market and purport to restrict a vendor's ability to conduct business with companies, such as traditional retail stores, that are <u>not</u> QVC's competitors in the direct response television market.

12. Upon information and belief, QVC frequently obtains its unlawful restraints on trade through coercion and duress. Moreover, QVC extracts the anti-competitive agreements in consideration for what are wholly illusory promises from QVC.

13. QVC's anti-competitive agreements extend far beyond the protection of any legitimate business interests.

### III. QVC Coerced the Schieffelins Into an Exclusive Distributorship Agreement, But the Plaintiffs Have Never Licensed Their Models Prefer Trademarks to QVC

14. In 1998, the Schieffelins approached QVC about the possibility of promoting and distributing color products (*e.g.* lipstick, eye shadow, rouge and the like) they had designed and were selling under the name Models Prefer (the "Models Prefer Products").

15. QVC agreed to promote and distribute the Models Prefer Products. Accordingly, the Schieffelins incurred significant expense to manufacture, package and ready Models Prefer Products for QVC.

16. QVC refused to promote or distribute any Models Prefer Products until the Schieffelins executed a "standard" distribution agreement (the "Agreement"), which QVC provided. QVC did not permit negotiation of the Agreement's terms. Faced with substantial loss unless they capitulated to QVC's demand, the Schieffelins signed the Agreement.

17. The Agreement purports to grant QVC the "exclusive worldwide right" to distribute and promote "all health and beauty products under the trademark and trade name of 'Models Prefer'" through "all means and media, including without limitation, Electronic Media."

18. The Agreement is not a license but rather a distribution agreement, and at no time did the Plaintiffs ever license the Models Prefer trademarks to QVC. QVC has never owned the Models Prefer trademarks or held a license to use the Models Prefer trademarks. QVC has never

owned any property rights to the name "Models Prefer." QVC's sole right is to act as the exclusive distributor of Models Prefer Product in electronic media.

### IV. QVC's Tortious Conduct

19. QVC has intentionally sabotaged the Schieffelins' efforts to grow and expand the Models Prefer Products and sales and to obtain the full value of their Models Prefer trademarks. By way of example only, on numerous occasions, the Schieffelins sought to expand the Models Prefer Products beyond color cosmetic products and into areas such as cosmetic treatment products, jewelry and fashion. QVC refused to promote or distribute these expanded product lines and refused to permit the Schieffelins to promote or distribute these expanded product lines through others. By way of another example, the Schieffelins have sought to promote and distribute Models Prefer Products at retail outlets (stores). Again, QVC refused to permit the Schieffelins to sell through retail outlets. As a result of these and other actions taken by QVC, Plaintiffs have lost significant sales and business opportunities and the value of their trademarks has been diminished.

20. Additionally, in 2004, Plaintiffs were approached by Elizabeth Arden, Inc., regarding a transaction to be consummated between Elizabeth Arden and Plaintiffs. In order to consummate this transaction, the Schieffelins sought relief from the purported restrictions on retail sales set forth in the Agreement. QVC had no legitimate business purpose to deny this relief. Indeed, QVC has permitted many other similarly-situated cosmetic companies to enter into outside retail transactions. Nevertheless, QVC interfered with the negotiations between Plaintiffs and Elizabeth Arden, creating unnecessary and illegitimate barriers so as to make the transaction economically infeasible. Consequently, Elizabeth Arden withdrew its offer, causing Plaintiffs to lose over $8 million.

21. At the same time that QVC was preventing Plaintiffs from growing their business and exploiting their trademarks through other channels, QVC was restricting and limiting the Schieffelins' ability to sell Models Prefer Products through QVC, thus compounding Plaintiffs' losses.

## COUNT I

### CONVERSION AND THEFT OF INTELLECTUAL PROPERTY

22. Plaintiffs incorporate by reference all preceding and succeeding paragraphs of this Complaint as if set forth in their entirety herein.

23. Through its actions, QVC has, in effect, appropriated the Models Prefer trademark and converted it for QVC's own use and purpose.

24. QVC's actions have decreased the value of the Models Prefer trademark and have caused Models Prefer, Ltd. to suffer damages well in excess of $75,000.

## COUNT II

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

25. Plaintiffs incorporate by reference all preceding and succeeding paragraphs of this Complaint as if set forth in their entirety herein.

26. QVC has tortiously interfered with the Plaintiffs' prospective business relations with the purpose and intent to harm the Plaintiff by preventing the relations from occurring.

27. QVC had no legitimate or lawful justification or excuse for its interference.

28. QVC's actions have caused the Schieffelins to suffer damages well in excess of $75,000.

## COUNT III

### UNFAIR COMPETITION

29. Plaintiffs incorporate by reference all preceding and succeeding paragraphs of this Complaint as if set forth in their entirety herein.

30. QVC has engaged in unfair competition.

31. QVC's actions have caused Plaintiffs to suffer damages well in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs David and Stacey Schieffelin and Models Prefer, Ltd. respectfully pray that judgment be entered in their favor and against Defendant QVC, Inc. as follows:

a. That compensatory damages be awarded to Plaintiffs in an amount in excess of $75,000;

b. That Models Prefer, Ltd. be compensated for the damage to its intellectual property;

c. That punitive damages be assessed against Defendant;

d. That Defendant be directed to pay all costs and expenses, including attorneys' fees; and

e. That such further relief be entered as is just.

Dated: March 31, 2007

GERSTEN, CLIFFORD & ROME, LLP

By: _____
Eliot B. Gersten, Esquire
214 Main Street
Hartford, Connecticut 06106-1881
Telephone: (860) 527-7044

*Attorneys for Plaintiffs Stacey Schieffelin, David Schieffelin and Models Prefer, Ltd.*