# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QVC, INC. | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 06-cv-4231(TON) |
| STACEY SCHIEFFELIN, DAVID SCHIEFFELIN, and MODELS PREFER, LTD., | : | |
| Defendants. | : | |

## REPLY MEMORANDUM OF PLAINTIFF QVC, INC.
## IN FURTHER SUPPORT OF MOTION FOR LEAVE
## TO FILE SECOND AMENDED COMPLAINT

Plaintiff, QVC, Inc. ("Plaintiff"), by and through its undersigned counsel, respectfully submits this reply memorandum in further support of its **Motion for Leave to File Second Amended Complaint** ("Motion for Leave").

While defendants, Stacey Schieffelin, David Schieffelin and Models Prefer, Ltd. (collectively "Defendants"), oppose Plaintiff's Motion for Leave on the specious and unsupported grounds that "the proposed amendment would be futile and is proffered in bad faith," no basis is advanced by Defendants that overrides the liberal policy of amendment provided by Fed.R.Civ.P. 15. Defendants' inherently inconsistent assertion that the Motion for Leave "would be futile" ignores the allegations of Plaintiff's proposed Second Amended Complaint and provides no basis upon which to deny the Motion for Leave. Most interesting of all is Defendants' argument that the Motion for Leave is "proffered in bad faith," which argument not only lacks any basis, much less veracity, but which is belied by Defendants' own

"forum shopping" conduct. Defendants' motives are transparent ---- their motion to dismiss Plaintiff's pending complaint and their opposition to the Motion for Leave are no more than actions in furtherance of their "forum shopping" scheme. Such gamesmanship should not be condoned, much less rewarded.

As set forth in Plaintiff's Motion for Leave, the proposed Second Amended Complaint states a claim against Defendants upon which relief can be granted. Defendants' response to the Motion for Leave sets forth no legal basis why Plaintiff may not ultimately succeed on the claims raised in the proposed Second Amended Complaint. It is well settled that, for purposes of a request for leave to amend under Fed.R.Civ.P. 15, a proposed amended pleading "must be viewed in the light most favorable to the plaintiff and should not be rejected unless it is clear that the plaintiff is not entitled to any relief thereunder." *E.g., Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F.Supp.2d 329 (E.D. Pa. 2003). Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, . . . leave sought should, as the rules require, be 'freely given'." *Foman v. Davis,* 371 U.S. 178, 182 (1962). *See also Phoenix Technologies, Inc. v. TRW, Inc.*, 154 F.R.D. 122, *aff'd* 43 F.3d 1462 (1994). Indeed, "in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient. [citations omitted]. 'Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.'" *Boone v. Pennsylvania Office of Vocational Rehabilitation*, 373 F.Supp.2d 484 (M.D. Pa. 2005) *quoting Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) Moreover, denial of leave based upon delay requires that the delay, in fact, result in prejudice to the opposing party. *See also Freedom Int'l Trucks Inc. v. Eagle Enterprises, Inc.*, No. Civ. A 97-

4237, 1998 WL 639254, at *1 (E.D. Pa. Sept. 15, 1998) (citing *Kiser v. General Elec. Corp.*, 831 F.2d 423, 427 (3d Cir. 1987)). Defendants have not articulated any "prejudice" that would result in the event leave is granted nor can they, especially where, as in the present case, there has yet to be even a conference under Fed.R.Civ.P. 16 held or any discovery taken at all.

No factors are present or are otherwise demonstrated as to why Plaintiff should not be granted leave to file an amended pleading and to proceed to develop the factual record to support its claims. Plaintiff, accordingly, submits that its Motion for Leave should be granted.

**I.      Plaintiff's Second Amended Complaint
         Constitutes a "Case or Controversy"**

Defendants contend that Plaintiff's proposed Second Amended Complaint does not "cure the jurisdictional defects" of Plaintiff's existing claims because "it is still premised upon a letter conveying a settlement proposal." This issue has been briefed in depth by both parties in connection with Defendants' motion to dismiss and Plaintiff will not take up the Court's time to re-state that which previously has been set forth at length. Plaintiff simply state clearly and emphatically that Defendants have terminated the underlying license agreement between the parties; have refused to provide product in accordance with the terms of the license agreement; and have otherwise refused to perform under the license agreement, all as alleged in Plaintiff's pleadings. Any assertion by Defendants to the contrary is no more than an attempt to manipulate the judicial system and deprive Plaintiff of its opportunity to be heard before this Court and in this forum  Without belaboring the point, even the letter attached as Exhibit "A" to **Defendants' Memorandum Of Law In Opposition To Motion Of Plaintiff QVC, Inc. For Leave To File Second Amended Complaint** ("Defendants' Opposition to Motion for Leave"), which, incidentally, is not the only notice of termination given to Plaintiff, states:

- **"For  good orders sake, this also serves as formal notice of our client's**

**termination of any outstanding agreements with QVC US."** and

- **"Hence, this termination should come as no surprise to QVC US."**

While, indeed, the termination did come as a surprise to Plaintiff, it is difficult to conceive of a more clear and definitive notice of termination of the agreement between the parties than that presented by Defendants' letter of September 12, 2006.

Defendants present the Court with "snippets" from discussions seeking an amicable resolution of the very "case and controversy" that Defendants maintain does not exist. The very existence of such discussions, in fact, demonstrates the existence of the dispute and Plaintiff's right to seek judicial intervention and relief. While Defendants continually exploit the existence of such discussions in an effort to avoid having this Court address Plaintiff's claims, Plaintiff is precluded by Fed.R.Evid. 408 from presenting this Court with statements made by Defendants in such discussions that would support Plaintiff's position. Defendants' manipulation and misuse of Fed.R.Evid. 408 not only violates the purpose of such Rule of Evidence, but the public policy behind it that promotes settlement discussions.

At the same time at which Defendants deny the existence of a dispute with Plaintiff, Defendants commenced an action in the United States District Court for the District of Connecticut (the "Connecticut Action"). *See* Exhibits "A" and "B" to **Sur-Reply Memorandum of Plaintiff in Further Opposition to Defendants' Motion to Dismiss the Amended Complaint and to Strike Paragraphs of the Amended Complaint**. The Connecticut Action is premised upon the same license agreement at issue before this Court and brings into issue the same rights giving rise to Plaintiff's claims before this Court. As set forth in the proposed Second Amended Complaint, the subject contract grants to Plaintiff the exclusive worldwide license to distribute certain products. Plaintiff's claims before this Court arise from

Plaintiff's assertion of rights under such license agreement and Defendants' denial of such rights. Conversely, the Connecticut Action is based an allegation that Plaintiff has no such rights. The Connecticut Action is nothing more than an assertion of Defendants' defenses to Plaintiff's claims in this matter and, at most, compulsory counterclaims under Fed.R.Civ.P 13(a). Defendants' argument that the leave to file the proposed Second Amended Complaint should be denied because QVC has no interest in the "Models Prefer trademarks" is the very claim asserted by Defendants in the Connecticut Action. Defendants' argument simply raises issues to be resolved in the present litigation and is not a basis to deny leave to file an amended pleading. Defendants' challenge to the Motion for Leave is no more than an attempt to avoid the application of Fed.R.Civ.P. 13(a) and a further step in their "forum shopping" efforts to avoid this Court in favor of the Connecticut venue.

It defies logic that Defendants, on the one hand, can commence a civil action in Connecticut based upon an interpretation of an agreement between the parties, and then, on the other hand, assert that no "case or controversy" exists between the parties regarding the very same agreement and issues raised in Plaintiff's previously filed action before this Court. Defendants stumble over their inherent inconsistent arguments.

Plaintiff desires no more than to have this Court determine the rights of the parties through the action commenced in this forum. Defendants' commencement of the Connecticut Action disproves their disingenuous contention that there is no "case or controversy" raised in Plaintiff's previously commenced civil action regarding Plaintiff's rights and the validity and enforceability of the agreement between the parties.

## II. The Proposed Second Amended Complaint States a Claim Upon Which Relief Can Be Granted

Defendants' second argument in opposition to Plaintiff's Motion for Leave ignores the applicable standards for leave to amend under Fed.R.Civ.P. 15 and again seeks to manipulate the facts underlying the claims before this Court. While Defendants accurately summarize the primary substantive difference between the proposed second amended complaint and the existing complaint – the proposed second amended complaint asserts a claim for tortious interference with contract against defendant Models Prefer Ltd. ("Models Prefer"), Defendants argue that such a claim is invalid and the Motion for Leave should be denied because "[i]t is black letter law that a defendant cannot tortiously interfere with its own contract." Essentially, Defendants argue that the tortious interference claim must fail because, in the proposed Second Amended Complaint, Plaintiff alleged that, as an agent or representative, Models Prefer is bound by the terms of the subject agreement. There is nothing inconsistent with such an allegation and Plaintiff's tortious interference claim.

In their Motion to Dismiss the pending complaint, Defendants argued "[i]t is black letter law that a person or entity who is not a party to a contract generally is not obligated under that contract and cannot be sued for its breach." The proposed Second Amended Complaint responds to and resolves this argument. Plaintiff's proposed Second Amended Complaint alleges that, while Models Prefer is bound by the subject agreement as an agent or representative of the other Defendants, the actions of Models Prefer, as a third party to the contract, constitutes conduct giving rise to a claim of tortuous interference. The proposed Second Amended Complaint nowhere alleges that Models Prefer is a signatory to the subject agreement or a named party. The proposed Second Amended Complaint asserts claims against Models Prefer as a third party interfering with Plaintiff's rights and license under the subject agreement.

Defendants, of course, would have it both ways.  Defendants seek to dismiss Plaintiff's pending complaint based upon the argument that Models Prefer ***is not*** a party to the subject agreement while, at the same, argue that Plaintiff should not be permitted to amend its pleading to assert third party claims against Models Prefer because Models Prefer *is* a party to the Agreement.  Defendants' argument is no more than an exercise in obfuscation and an argument of desperation.

Moreover, Plaintiff's proposed Second Amended Complaint must be reviewed under the "short and plain statement" requirements of Fed.R.Civ.P. 8(a).  *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004).  Courts are required to construe complaints so "as to do substantial justice." Fed.R.Civ.P. 8(f).  To the extent that this Court should find that more facts may be found necessary to resolve or clarify the issues presented, denial of leave to amend is not the remedy. Rather, the parties may avail themselves of the civil discovery mechanism under the Rules of Civil Procedure. *Alston v. Parker*, *supra*.  At this stage, Plaintiff should be permitted to develop its claims for relief before this Court and not, as Defendants would have in order to succeed with their strategy of "forum shopping," be denied leave to amend its pleading to pursue its claims before this Court.

### III.    QVC Has Acted in Good Faith

Defendants argue that Plaintiff's "sudden decision to cut off all discussions and instead seek leave to assert yet one more baseless claim against [Defendant Models Prefer] appears to be an attempt to pressure the Schieffelins to capitulate to a settlement on QVC's terms … is a bad faith use of the procedural rules."  It is unfortunate that Plaintiff needs to respond to such accusations as they are not even remotely based upon the true facts and events.  Filing an amended pleading at the very early stages of litigation to allege additional theories of liability is

neither unusual nor malicious – especially when it is done in response to issues raised by a defendant's motion to dismiss the pending pleading. Plaintiff has not engaged in any conduct that, by any stretch of the imagination, could be construed to "bad faith."

Defendants' argum that Plaintiff is acting in "bad faith" based solely upon two letters between counsel for the parties. Rather than demonstrate "bad faith," the letters establish that Plaintiff acted only in "good faith" and in keeping with the spirit of the federal rules in this matter.

Plaintiff commenced the within civil action based upon Defendants' termination of the Agreement on September 22, 2006. Following commencement of the litigation, ***and based upon express statements made by Defendants when they terminated the agreement between the parties that they intended to proceed in contravention of the restrictive covenant and non-competition provision of such agreement***, Plaintiff's counsel prepared papers to request that this Court grant preliminary injunctive relief under Fed.R.Civ.P. 65 to maintain the *status quo* during the pendency of the litigation. (Declaration of Nathaniel Metz, Esquire ["Metz Decl."] at ¶ 4). In keeping with the spirit of the federal rules, and consistent with counsel's obligation to avoid motion practice before the Court if possible, Plaintiff's counsel sent the letter, dated September 25, 2006, to Defendants' counsel seeking an agreement to maintain the *status quo* under the restrictive covenant and non-competition provision of the subject agreement so as to avoid the need for Plaintiff to seek "judicial intervention and immediate injunctive relief." (Metz Decl.. at ¶ 5). In fact, such an agreement was reached and Plaintiff's need to seek immediate injunctive relief was obviated. (Metz Decl.. at ¶ 6). Based upon the representation of Defendants' counsel that Plaintiff would be given ten days notice of any action to be taken in contravention of the restrictive covenant and non-competition provision of the subject agreement, Plaintiff refrained

from filing its request for preliminary injunctive relief unless and until such notice was given by Defendants. (Metz Decl.. at ¶ 6).

Remarkably, after Plaintiff acted in a manner most consistent with its obligations to the Court and the requirements of the Rules of Civil Procedure, Defendants would misuse Plaintiff's actions to claim Plaintiff acted in "bad faith." Plaintiff submits that nothing in its attempt to reach a non-judicial agreement to maintain the *status quo* and avoid the need for injunction proceeds constitutes "bad faith."

Similarly, Defendants' submission of their own settlement proposals in the letter attached as Exhibit "C" to Defendants' Opposition to Motion for Leave betrays Plaintiff's belief that discussions directed to reaching an amicable resolution of the parties' dispute would be confidential and would not be disclosed to the Court. Plaintiff certainly could submit to the Court its responses to Defendants' proposals and its own proposals, but doing so would only compound the injury done to the settlement process by Defendants' action. Plaintiff, of course, is precluded by Fed.R.Evid. 408 from disclosing Defendants' responses to Plaintiff's proposals, but, obviously, this litigation is not resolved. Not only do Defendants misuse the settlement process, but, incredibly, they use Plaintiff's "good faith" efforts in undertaking settlement discussions to support a fallacious argument that the existence of settlement discussions establishes the non-existence of a dispute and that, therefore, Plaintiff acted in "bad faith" by instituting a civil action to protect its rights.

In any event, the substance of the letter attached as Exhibit "C" to Defendants" Opposition to Motion for Leave show no more than that the parties engaged in settlement discussions after the dispute arose and litigation commenced. To grant any creditability to Defendants' argument that such discussions show a lack of a "case or controversy" between the

parties or evidence "bad faith" is both nonsensical and a deterrent to any future settlement discussions between litigants.

Plaintiff has done nothing more than seek to protect its rights under an agreement between the parties and respond to overtures by Defendants to resolve this matter. By contrast, Defendants have done everything in their power to divert the Court's attention away from the fundamental issues and to have this matter heard in another forum of their choosing.

For the foregoing reasons, Plaintiff QVC, Inc. respectfully submits that its **Motion for Leave to File Second Amended Complaint** be granted to permit Plaintiff to file its proposed Second Amended Complaint.

Respectfully submitted,

SAUL EWING LLP

By: */s/ Nathaniel Metz*
_____
Nathaniel Metz, Esquire
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
(610) 251-5099
(610) 722-3271 (Telefacsimile)
nmetz@saul.com
John E. Bisordi, Esquire
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7759
(215) 972-1831 (Telefacsimile)
jbisordi@saul.com

Dated: April 12, 2007        Attorneys for Plaintiff QVC, Inc.